IN RE DISQUALIFICATION OF SAFFOLD.

THE STATE OF OHIO *v.* DEMPSEY.

[Cite as *In re Disqualification of Saffold*, 163 Ohio St.3d 1233,

2021-Ohio-114.]

*Judges—Affidavits of disqualification—R.C. 2701.03—A judge's failure to respond to allegations of bias and prejudice may result in the judge's disqualification to avoid the appearance of impropriety—Affidavit granted.*

(No. 20-AP-103—Decided December 24, 2020.)

ON AFFIDAVIT OF DISQUALIFICATION in Cuyahoga County Court of Common Pleas, General Division, Case No. CR-20-652697-A.

_____

**O'CONNOR, C.J.**

{¶ 1} Sharlene Ramsey, counsel for the defendant, has filed an affidavit pursuant to R.C. 2701.03 and the Ohio Constitution, Article IV, Section 5(C) seeking to disqualify Judge Shirley Strickland Saffold from the above-referenced case.

{¶ 2} Ms. Ramsey alleges that Judge Saffold's bailiff, who is not an attorney or judicial officer, has "acted as a jurist" in the matter by scheduling and conducting pretrials when Judge Saffold was absent from the courthouse. The bailiff, Ms. Ramsey avers, was also hostile toward her and attempted to "strong arm" counsel and the defendant into entering a plea agreement. Ms. Ramsey believes that Judge Saffold, through her bailiff, has created an appearance of impropriety requiring the judge's removal.

{¶ 3} Judge Saffold filed a response to the affidavit and requests that it be denied. The judge states that she has never met Ms. Ramsey nor the defendant. She also states that it is common practice for bailiffs to schedule and facilitate

pretrials and that Ms. Ramsey and her client caused any problems with the judge's bailiff.

**Timing of the affidavit**

{¶ 4} Under R.C. 2701.03(B), an affidavit of disqualification shall be filed "not less than seven calendar days before the day on which the next hearing in the proceeding is scheduled." "This statutory deadline may be set aside only 'when compliance with the provision is impossible,' such as when the alleged bias or prejudice occurs fewer than seven days before the hearing date or the case is scheduled or assigned to a judge within seven days of the next hearing." *In re Disqualification of Gaul*, 147 Ohio St.3d 1219, 2016-Ohio-7034, 63 N.E.3d 1211, ¶ 3, quoting *In re Disqualification of Leskovyansky*, 88 Ohio St.3d 1210, 723 N.E.2d 1099 (1999).

{¶ 5} Ms. Ramsey filed her affidavit one day before a bond hearing/pretrial scheduled for November 17, 2020. She averred, however, that on November 12, the bailiff scheduled the November 17 court appearance. She also averred that the alleged bias occurred during pretrials on November 10 and 12. Because the case was scheduled within seven days of the next hearing and the alleged bias occurred during that time frame, Ms. Ramsey's affidavit was properly accepted for filing.

**Merits of the disqualification request**

{¶ 6} "The proper test for determining whether a judge's participation in a case presents an appearance of impropriety is * * * an objective one. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality." *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8. For the following reasons, an objective observer would have serious doubts about Judge Saffold's impartiality and the integrity of the proceedings.

{¶ 7} First, the record gives the impression that the bailiff—not Judge Saffold—has handled this case. On October 27, 2020, the arraignment court

assigned the matter to Judge Saffold and scheduled the first pretrial for November 10. Ms. Ramsey avers that she appeared for the pretrial without her client, who had relocated out of state, and that when she arrived in Judge Saffold's office, she observed the judge's bailiff engaging in friendly conversation with another attorney who also had not brought his client. (Indeed, as Ms. Ramsey notes, most judges were conducting proceedings remotely because of the increase in COVID-19 cases.) Ms. Ramsey states that after the other attorney left, she approached the bailiff's work space but he admonished her for coming too close and then became hostile with her after learning that the defendant was not with her. Ms. Ramsey claims that she asked for the same treatment as the attorney appearing before her, but the bailiff threatened to issue a warrant and ordered the defendant to appear for a second pretrial on November 12 at 10:30 a.m. According to Ms. Ramsey, Judge Saffold's door was closed, her courtroom was empty, and it appeared that she was not in the building.

{¶ 8} The defendant was late for the November 12 pretrial. According to Ms. Ramsey, the bailiff threatened to remand the defendant and revoke his bond if he failed to appear by noon. The defendant appeared at 11:50 a.m. Ms. Ramsey avers that the bailiff instructed counsel to work out a plea agreement and stated that another judge would accept it because Judge Saffold was "off." Because the defendant had not yet had an opportunity to review discovery, Ms. Ramsey and her cocounsel informed the bailiff that the defendant would not enter a plea that day. The bailiff, Ms. Ramsey alleges, ordered the defendant to appear for another hearing on November 17 and instructed that he should not leave the state. Ms. Ramsey interpreted the bailiff's actions as an attempt to "strong arm" counsel and the defendant into entering a plea and that the bailiff had essentially ordered the defendant and counsel to appear in person for three hearings within one week— without Judge Saffold's presence or participation.

{¶ 9} Based on this record, it appears that the bailiff conducted the first two pretrials, scheduled the second and third pretrials, ordered the defendant to appear for the pretrials, and threatened to revoke his bond if he failed to timely appear—all without any involvement from Judge Saffold. For her part, Judge Saffold states that it is common practice for bailiffs to schedule and facilitate pretrials without the presence of the judge and that in this case, the first pretrial was merely an opportunity for counsel to meet, discuss discovery, and set a trial schedule. But if that is true, the judge has failed to explain why the defendant's presence was mandatory for mere scheduling matters—especially considering that the judge herself chose not to attend and courthouses are attempting to limit in-person appearances due to the COVID-19 pandemic. Moreover, although it may be common for a judge's staff to set or help facilitate a scheduling or case-management conference, the November 12 pretrial went beyond mere scheduling matters. To the extent that the hearing on November 10 or 12 was the "pretrial" conference contemplated by Crim.R. 17.1, Judge Saffold should have been there. Judges must be wary of improperly entrusting—or appearing to entrust—judicial duties to court staff.[1]

{¶ 10} Second, Judge Saffold was not particularly forthcoming in her responses to Ms. Ramsey's affidavit. Judges may be disqualified when they refuse to explain or clarify their conduct, especially when they are given a second opportunity to do so. *In re Disqualification of Gaul*, 161 Ohio St.3d 1249, 2020-Ohio-5313, 162 N.E.3d 899; *see also In re Disqualification of Corrigan*, 94 Ohio St.3d 1234, 1235, 763 N.E.2d 602 (2001) ("a judge's failure to respond to allegations of bias and prejudice may result in the judge's disqualification to avoid

---

1. Indeed, judges have been disciplined for inappropriately delegating adjudicative responsibilities to staff. *See, e.g.*, *Disciplinary Counsel v. Kubilus*, 101 Ohio St.3d 29, 2003-Ohio-6610, 800 N.E.2d 1131; Gray, *Improper Delegation of Adjudicative Responsibilities*, Judicial Conduct Reporter 1, 9-12 (Fall 2016) (surveying various state's advisory opinions and cases on judges inappropriately entrusting their judicial duties to court staff and others).

the appearance of impropriety"); *In re Disqualification of Burge*, 136 Ohio St.3d 1205, 2013-Ohio-2726, 991 N.E.2d 237, ¶ 8 (disqualifying a judge, in part, because he had failed to respond to some of the allegations in a supplemental affidavit of disqualification). Here, Judge Saffold was asked to supplement her initial response to Ms. Ramsey's affidavit to clarify some of the judge's comments and to directly address one of Ms. Ramsey's primary allegations. But Judge Saffold's supplemental response only muddied the waters.

{¶ 11} For example, in her initial response, Judge Saffold stated that because of the specific charges against the underlying defendant, he "was determined to be higher risk and therefore his personal attendance was mandatory" and that her court—i.e., her bailiff—was forced to reschedule the pretrial from November 10 to November 12 because of the defendant's "flagrant disregard for the instruction of the Court that he be personally present for all hearings." Judge Saffold was asked to supplement her response to explain when she instructed the defendant to appear in person for the November 10 pretrial. Judge Saffold, however, seemed perplexed by the request, responding: "You indicate I had a conversation with [the defendant]" and "I do not remember or believe that to be true, as I have no recollection of ever engaging [Ms. Ramsey] either." If the defendant had "flagrant[ly] disregard[ed]" an "instruction" of the court, it should have been easy for the judge to identify when her court issued the instruction.

{¶ 12} Similarly, in the judge's initial response, she criticized Ms. Ramsey for assuming that she was not in the courthouse for the pretrials. The judge also explained that pursuant to a COVID-19 protocol adopted by the Cuyahoga County Court of Common Pleas, she could hold hearings only on Tuesdays and Thursdays, which were the days that the November 10 and 12 pretrials were held. Judge Saffold was asked to supplement her response to simply confirm that she was in fact in the courthouse for the November 10 and 12 pretrials. In response, Judge Saffold stated that she is available by phone and Zoom every day and repeated that

she is scheduled in the office on Tuesdays and Thursdays. The judge again failed to confirm that she was in the courthouse on the *particular days* in which the two pretrials were held in this case.

{¶ 13} In the end, Judge Saffold could have responded to the affidavit of disqualification by acknowledging that Ms. Ramsey and her bailiff had a rough start, pledging to personally preside over all future matters, and affirming that nothing between Ms. Ramsey and the bailiff will impact the judge's impartiality. Instead, Judge Saffold responded with inconsistent and puzzling statements and made unnecessary assertions about Ms. Ramsey. "Attorneys should be free to challenge, in appropriate legal settings, a court's perceived partiality without the court misconstruing the intent of the challenge." *In re Disqualification of Greene*, 143 Ohio St.3d 1235, 2015-Ohio-2874, 37 N.E.3d 159, ¶ 8.

{¶ 14} On this record, Judge Saffold's disqualification is necessary to avoid any appearance of partiality and to ensure the parties' and the public's confidence in the fairness and integrity of the proceedings. The affidavit of disqualification is therefore granted. The case is returned to the administrative judge of the Cuyahoga County Court of Common Pleas, General Division, for random reassignment to another judge of that court.

_____